[No. 22167-1-I. Division One. July 24, 1989.]

THE STATE OF WASHINGTON, *Respondent*, v. LEAO PUAPUAGA, *Appellant*.

*Rita Griffith* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney, Donna L. Wise, Senior Appellate Attorney,* and *Celeste Stokes, Deputy,* for respondent.

WEBSTER, J.—Leao Puapuaga appeals his conviction of indecent liberties. He argues that, because his victim was asleep, the State failed to present sufficient evidence of an element of the crime, that the victim was "physically helpless." We affirm.

## FACTS

Puapuaga resided in a boarding house with four other persons, one of whom was the victim in this case. The house consisted of a common kitchen and living areas, and separate bedrooms with locking doors. The victim was acquainted with Puapuaga, but did not socialize with him. Only once, when the victim suffered from bronchitis, did she allow Puapuaga into her room so that he could deliver some cough syrup.

On October 1987, at about 5 a.m., the victim awoke and found Puapuaga in her room. She had left her bedroom door ajar to allow her cat to exit during the night. Puapuaga was kneeling beside her bed with his hand under her covers touching her crotch area. When she discovered what was happening, she started screaming and yelled at him to leave her room.

Puapuaga admitted entering the victim's room and touching her while she slept, but he denied having any sexual contact. A jury found Puapuaga guilty of indecent liberties, and the court imposed a sentence within the standard range.

## DISCUSSION

Puapuaga argues that the evidence was insufficient to support a conviction of indecent liberties because his victim—who was asleep when the sexual touching occurred—was not "physically helpless" as required by statute.

Puapuaga was convicted of indecent liberties under former RCW 9A.44.100(1)(d), now codified at RCW 9A.44-.100(1)(b), which read:

**Indecent liberties.** (1) A person is guilty of indecent liberties when he knowingly causes another person who is not his spouse to have sexual contact with him or another:

. . .

(d) When the other person is incapable of consent by reason of being mentally defective, mentally incapacitated, or physically helpless.

Former RCW 9A.44.010(4) states, "'[p]hysically helpless' means a person who is unconscious or for any other reason is physically unable to communicate unwillingness to an act."

Puapuaga attempts to draw a distinction between unconsciousness caused by an injury or drugs and the state of sleep which he calls "a temporary and limited state of unresponsiveness." None of the authorities cited by Puapuaga characterize the state of sleep as something different from unconsciousness for the purpose of sexual offenses. Puapuaga also fails to explain how a sleeping victim is not one who "for any other reason is physically unable to communicate unwillingness to an act." Puapuaga simply argues that a sleeping person is capable of receiving some sensory stimuli.

Washington appellate courts have not addressed whether a sleeping victim is "physically helpless" for the purpose of establishing the crime of indecent liberties.

Authorities from other jurisdictions, however, support the conclusion that a sleeping victim is unconscious, or otherwise incapable of communicating unwillingness, either of which constitutes physical helplessness under our statute. For example, *In re Childers*, 310 P.2d 776, 777 (Okla. Crim. App. 1957) applied a statute which defined rape as sexual intercourse with a victim who is "unconscious of the nature of the act." The court stated, "[i]t is easily understood, and universally recognized, that a person who is unconscious by reason of intoxication, drugs, or sleep, is incapable of exercising any judgment in any matter whatsoever." *In re Childers*, at 778. At common law, rape occurred when a defendant attacked a victim who was asleep because the victim was incapable of manifesting consent. *See State v. Welch*, 191 Mo. 179, 89 S.W. 945, 947 (1905); *Harvey v. State*, 53 Ark. 425, 14 S.W. 645, 646 (1890).

Another instructive case dealt with an indictment which alleged sexual contact with a woman "by force and against her will" and the proof presented at trial established rape under the theory that the victim was "mentally defective, mentally incapacitated, or physically helpless." *State v. Moorman*, 320 N.C. 387, 390, 358 S.E.2d 502, 504–05 (1987). The *Moorman* court interpreted a statutory definition of "physically helpless" very similar to Washington's. The statute "defines 'physically helpless' to mean '(i) a victim who is unconscious; or (ii) a victim who is physically unable to resist . . . a sexual act or communicate unwillingness to submit to . . . a sexual act.'" *Moorman*, at 390 (quoting N.C. Gen. Stat. § 14–27.1(3)). The evidence showed that the victim was asleep when the sexual act occurred. *Moorman*, 358 S.E.2d at 504. The court concluded that sexual intercourse with a sleeping victim established the crime of rape. *Moorman*, 358 S.E.2d at 506.

Several other states specifically include "asleep" in the definition of "physically helpless" as used in sexual offense statutes. *See, e.g.*, Fla. Stat. § 794.011(1)(e) *cited in Davis v. Florida*, 538 So. 2d 515, 516 (Fla. Dist. Ct. App. 1989);

Mich. Stat. Ann. § 28.788(1)(i) *cited in People v. Perry,* 172 Mich. App. 609, 432 N.W.2d 377, 382 (1988).

The state of sleep appears to be universally understood as unconsciousness or physical inability to communicate unwillingness. Therefore, any rational trier of fact could have found beyond a reasonable doubt that the victim was physically helpless based on the evidence that she was asleep. *See State v. Green,* 94 Wn.2d 216, 221–22, 616 P.2d 628 (1980).

We affirm the conviction.

SWANSON and PEKELIS, JJ., concur.